## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **MARIA LOPEZ,** | Civ. No. 15-3759 (KM) |
| **Plaintiff,** |  |
| **v.** | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** |  |
| **Defendant.** |  |

### KEVIN MCNULTY, U.S.D.J.:

Maria Lopez brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Title II Disability Insurance Benefits. Upon reviewing the evidence and stating his reasons for assigning greater or lesser weight to different items, the Administrative Law Judge ("ALJ") concluded that Lopez was not disabled from March 15, 2005 through December 31, 2010, the last date insured. Lopez assigns the following errors to this decision: first, the ALJ should have considered her Crohn's disease and fibromyalgia to be severe impairments; second, the ALJ gave too little weight to the opinion of her treating physician, who stated Lopez could not effectively ambulate; third, the ALJ did not consider the testimony of Lopez's husband; and finally, the ALJ relied on the testimony of a vocational expert who did not consider all of Lopez's impairments.

Although I find that certain of these errors were likely harmless, I also find that the ALJ did not properly weigh on the record certain evidence supporting Lopez's ambulatory restrictions. Therefore, I remand for further evaluation and correction of the errors. This remand does not mandate a particular disposition of the case.

1

## I.    BACKGROUND

Lopez applied for disability benefits pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") on October 23, 2006. Her application alleged a March 15, 2005 onset of disability based on Crohn's disease/colitis, arthritis, and depression. (R. 474–76; 501)[1] Her claim was denied initially on September 17, 2007 (R. 222-24), and again on reconsideration on February 24, 2010 (R 230-34).

Unfortunately, the initially claimed disabilities were not the last of Ms. Lopez's misfortunes. In January 2008, between the time Lopez's claim was first denied and the time it was denied on reconsideration, Lopez fractured her left foot. This fracture led to surgeries in 2009 and 2010. At some point after her initial application, then, Lopez put before the SSA a number of medical records relating to that fracture. (*See* Opp. 7–9) It is helpful to keep in mind that this injury occurred in the middle of the relevant time period. Also after her initial application, Lopez began submitting evidence that fibromyalgia contributed to her disability.

Lopez requested and received a hearing before ALJ Donna Krappa on April 11, 2011. (*see* R 149–90, 235) On September 19, 2011, Judge Krappa issued a decision finding Lopez not disabled. That decision was based on a finding that, although she could not perform past relevant work, she could perform jobs existing in significant number in the general economy classified as "sedentary jobs". (*See* R. 209–10)

Lopez requested Appeals Council Review of ALJ Krappa's decision (R. 298–99), and in a July 22, 2013 order, the Appeals Council remanded Lopez's claim to the ALJ. The Council's remand decision cited lack of clarity regarding Lopez's mental limitations and a failure to include all mental limitations in a

---

[1]    Pages of the administrative record (ECF No. 10) are cited as "R _." Pages of the Plaintiff's Brief (ECF No. 19) are cited as "Br _." Pages of the Commissioner's brief (ECF No. 20) are cited as "Opp. _." Pages of the Plaintiff's Reply brief (ECF No. 23) are cited as "Reply _."

hypothetical posed to the vocational expert ("VE"). (R. 218) The Appeals Council instructed the ALJ to further evaluate Plaintiff's mental impairments, give further consideration to Plaintiff's Residual Functional Capacity ("RFC"), and to obtain the testimony of a VE to clarify the effect of assessed limitations on Lopez's occupational base. (R. 217–221)

Supplemental hearings were held on October 8, 2013, and November 7, 2013 (R. 95–148, 50–95). Lopez testified at the November 7, 2013 hearing with the aid of a Spanish interpreter. (*See* R. 25) ALJ Patrick Kilgannon then issued a decision dated December 6, 2013, again finding Lopez not disabled (R. 19–41).

On December 18, 2013, Lopez filed a request for review of ALJ Kilgannon's decision. (R. 17–18) The Appeals Council denied that request for review on April 9, 2015, thereby rendering ALJ Kilgannon's decision the final decision of the Commissioner (*see* R 1–5). Sanchez now appeals that final decision, pursuant to 42 U.S.C. §§ 405(g) and/or 1383(c).

## II.    DISCUSSION

### A. Five-Step Process and this Court's Standard of Review

To qualify for Title II disability benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR §§ 404.1520, 416.920. Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

3

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, move to step four. Id. §§ 404.1520(d), 416.920(d).

**The RFC:** After step three, but before step four, the Commissioner determines the claimant's "residual functional capacity," (the "RFC") meaning "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, No. 2:13-CV-07187 KM, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015)

**Step 4:** Decide whether, based on her RFC, the claimant can return to her prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Social Security Administration to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); see *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d

4

Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedwomy v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007) (not precedential). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny,* 745 F.2d at 221–222; *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable.") (not precedential). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

5

### B. The ALJ's Decision

ALJ Kilgannon properly undertook the five-step inquiry. His conclusions are summarized as follows:

### Step 1

Lopez had not engaged in substantial gainful activity from the alleged onset date of March 15, 2005, through the date last insured of December 31, 2010 (the "relevant time period"). (R. 27)

### Step 2

Lopez had the following severe impairments: "left foot fracture in 2008 and mood disorder." (R. 27) ALJ Kilgannon declined to find that Lopez's Crohn's disease and fibromyalgia were severe impairments and explained in detail his reasons for doing so, which I summarize.

The ALJ first remarked on Lopez's ability to perform "busy activities," including traveling to Spain for vacation in November 2005 and June 2008, giving birth in November 2005 and thereafter raising her child, and cooking meals, shopping driving, and completing household chores, albeit with assistance. (R. 28–29)

He then acknowledged Lopez's "occasional complaints of musculoskeletal pain," but concluded that she had received "no significant treatment" and deemed objective medical findings in the record "unremarkable". (R. 28) For example, doctors' notes described Lopez's Crohn's disease, colitis, arthritis, and other pain symptoms in indefinite terms such as "indeterminate," "vague," and "not yet . . . fully determined." Cervical spine, right hip, and pelvis imaging/x-ray results were also essentially normal. The ALJ also acknowledged a doctor's statement that Lopez was "found to benefit from home assistance due to her medical condition," but found it vague and inconsistent with Lopez's ability to perform regular daily activities. (*Id.*)

Additionally, ALJ Kilgannon noted Lopez's various reports of lower quadrant pain in the record, but considered these against physicians' notes describing her Crohn's disease (which one report considered only "suspected") and colitis as well controlled, normal colonoscopies and a negative upper

6

gastrointestinal series, and no indication of "extremely excessive restroom visits or weight loss". (R. 28–29)

Finally, the ALJ considered an August 2013 physical consultative examination undertaken by Dr. Rahel Eyassu, M.D., "at the behest of the Social Security Administration," at which Lopez reported ongoing issues with Crohn's disease and a recent diagnosis of lupus with symptomatic flare-ups every three months. Dr. Eyassu diagnosed Crohn's disease, remarking on a March 2013 colonoscopy indicating mild inflammation due to proctitis, and "systemic lupus erythematosus involving the joints and causing fatigue during flare-ups." (R. 29) He also noted a "history of left ankle fracture with open reduction and internal fixation, removal of hardware and reconstruction of the Achilles tendon with persistent pain and swelling."

Based on these considerations, the ALJ concluded that Crohn's disease and fibromyalgia did not constitute severe impairments.

## Step 3

With respect to Lopez's "severe impairments" of left foot fracture and mood disorder, ALJ Kilgannon determined that Lopez did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 29). He declined to find that Lopez's impairments met the criteria for medical listing 1.02—major dysfunction of a joint—because the evidence did not demonstrate that Lopez has difficulty ambulating to the degree required in 1.00B2b[2]; she did not need ongoing use of an assistive

---

[2] 1.02 requires, in part, either "inability to ambulate effectively" or to perform fine and gross movements effectively. As defined in 1.00B2b:

(1) Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

device to walk; she vacationed in Europe for a month approximately six months following her foot injury; the evidence reported a "steady gait with only a slight limp"; and physical therapist and physical examination notes indicated a full range of motion with no deformities. (R. 30).

Because he determined that Lopez did not require ongoing use of an assistive walking device, and found "no mention in the medical record that the claimant cannot ambulate effectively," ALJ Kilgannon also declined to find that Lopez's impairments satisfied listing 1.03, which requires that a claimant demonstrate, *inter alia*, inability to ambulate effectively as defined in 1.00B2b. (*Id.*)

ALJ Kilgannon also declined to find that Lopez's left foot fracture met listing 1.08 (soft tissue injuries/burns), which "applies only to people who are under the ongoing care of a surgeon who is treating extensive soft tissue injuries (i.e., burns) . . . to restore major function." (*Id.*)

With respect to Lopez's alleged mental impairments, the ALJ determined they were not of the severity to meet listings 12.04 or 12.06. (R. 31)[3]  First, he

---

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*See* https://www.ssa.gov/disability/professionals/bluebook/1.00-Musculoskeletal-Adult.htm#1_02

[3]      A claimant's affective disorder meets or medically equals listing 12.04 (Affective Disorders) when it either satisfies both the paragraph A and paragraph B criteria, or satisfies the C criteria of that listing. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.04, 12.06.

To satisfy the paragraph A criteria, a claimant must, in essence, medically document the persistence of depressive, manic, or bipolar syndrome. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. To satisfy the Paragraph B criteria of listing 12.04, a

claimant must demonstrate that his affective disorder results in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration . . . .

*Id.*

      "'Marked' as a standard for measuring the degree of limitation . . . means more than moderate but less than extreme." *Id.* § 12.00. Activities of daily living include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." *Id.* Sec. 12.00C(1). Analysis of a claimant's activities of daily living involves an assessment of the "quality of these activities by their independence, appropriateness, effectiveness, and sustainability," and the extent to which a claimant is "capable of initiating and participating in activities independent of supervision or direction." *Id.*

      Listing 12.04, Paragraph C requires:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and" any of three symptoms: 1) repeated episodes of decompensation; 2) a residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in environment would cause the individual to decompensate; or 3) a history of one or more years' inability to function outside of a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C). *See generally Trzeciak v. Colvin*, No. CV 15-6333 (KM), 2016 WL 4769731, at *7 (D.N.J. Sept. 12, 2016).

      To meet or medically equal Listing 12.06 for anxiety related disorders, a claimant must meet either: (1) the requirements of Paragraph A (requiring documented findings of certain anxiety-related conditions and/or signs or symptoms, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(A)) *and* the requirements of Paragraph B (identical to the Paragraph B requirements for Listing 12.04); *or* (2) the requirements of Paragraph A *and* the requirements of Paragraph C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06. *See generally Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 n.3 (3d Cir. 2007).

      Paragraph C for Listing 12.06, unlike for Listing 12.04, simply requires that the claimant's anxiety-related disorder "[r]esult[] in complete inability to function independently outside the area of one's home." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(C). *See generally Trzeciak*, 2016 WL 4769731, at *7.

concluded that the evidence did not support the "paragraph B" criteria: Although Lopez had "moderate difficulties" in social functioning, he said, certain evidence showed that Lopez travels alone, shops in stores, socializes, gets along with others—including authority—and has never been fired due to social difficulties. (R. 30–31). And, although Lopez has "moderate difficulties" with concentration, persistence, or pace, the ALJ observed that Lopez is able to handle day-to-day money exchanges and personal finances. She also shops, prepares meals, raises a young child, and can focus on television programs. (R. 31) Additionally, Lopez had no episodes of extended duration decompensation, and was never hospitalized or taken to the emergency room due to psychiatric disorders.

The ALJ also concluded that there was also no evidence supporting the "'paragraph C" criteria. (*Id.*)

### RFC and Step 4 – Ability to Perform Past Work

Next, ALJ Kilgannon defined Lopez's RFC as follows:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant cannot climb ladders, ropes or scaffolds. She can occasional [sic] climb ramps and stairs, occasionally balance, stoop, kneel, crouch and crawl. The claimant is limited to a low stress job defined as having only occasional decision making required and only occasional changes in the work setting with only occasional interaction with the public and coworkers.

10

(R 32–33).[4]

Because several of Lopez's arguments on appeal pertain to evidence the ALJ considered in the process of determining the RFC, I briefly summarize the ALJ's evaluation of that record evidence.

First, ALJ Kilgannon recited Lopez's allegations that she suffers from a disability due to Crohn's disease, colitis, arthritis, and depression (R 32). The ALJ acknowledged Lopez's testimony that she has stomach pain that is sometimes alleviated by medication, that she takes medication for fibromyalgia, that she has had foot surgery, that she took medication for depression for roughly six months in 2006, that swelling in her joints rendered her unable to work, and that her doctor had told her to stop working during her 2005 pregnancy. (*Id.*)

ALJ Kilgannon then summarized and discussed the medical evidence and gave reasons for discounting as "not entirely credible" Lopez's allegations regarding the "intensity, persistence and limiting effects" of her symptoms (R. 32–39).

*Medical Record and Opinion Evidence on Lopez's Mental Condition*

The ALJ considered the following record evidence pertaining to Lopez's depression and mental state.

In March 2007, a primary care physician reported that Lopez had a chronic depression diagnosis which was exacerbated by the 2005 birth of her son. Thereafter, in September 2007, November 2009, and August 2013, Lopez

---

[4]     The Social Security Administration defines "Light work" as involving:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves pushing sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b).

underwent psychiatric consultative examinations, at least two of which were at the behest of the Social Security Administration. The findings of each examination were substantially the same: Lopez presented with depression each time (first moderately severe secondary to physical illness, then recurrent major depression, then depressive disorder not otherwise specified but not major depressive disorder), but Lopez showed intact judgment, concentration, and/or memory, and her examinations were otherwise unremarkable. Lopez never reported a history of psychiatric hospitalization. (R. 33)

As to mental impairments, ALJ Kilgannon specifically addressed the opinions of five clinicians:

(1) State agency evaluator Wayne Tillman, M.D., reviewed Lopez's medical evidence of record in September 2007, from which he determined Lopez could adapt to change in the workplace and respond to criticism, albeit with some difficulty. Of all the psychiatric opinions, the ALJ assigned the most weight to Dr. Tillman's. (R. 34–35)

(2) In November 2009, consultative examiner Dr. Perdomo, a psychologist, stated Lopez had chronic major concurrent depression that "may" affect her ability to function at a job. The ALJ assigned little weight to this opinion because Perdono "did not provide clear functional limitations" and his examination was largely unremarkable. (R. 35)

(3) The ALJ assigned limited weight to state evaluator and psychiatrist Harbans Multani, who reviewed the medical evidence of record in January 2010 and determined Lopez had mild restrictions in daily living activities and moderate difficulties with social functioning and concentration, persistence or pace. (*Id.*)

(4) Consultative examiner Dr. Figurelli, PhD, examined Lopez in August 2013 but determined he could not ascertain the nature, severity, or impact of her medical conditions. He completed a medical source statement which the ALJ said gave no clear indication of Lopez's

12

functioning during the relevant time period. The ALJ assigned this little weight. (*Id.*)

(5) Emmanuel Hriso, M.D., who began treating Lopez for mental health issues in September 2013, submitted an October 2013 disability form. Because the treatment had commenced only recently and did not cover the relevant time period, the ALJ assigned the disability form little weight. (*Id.*)

Relying most substantially on Dr. Tillman's opinion and Lopez's self-reported social activities (going to church, seeing friends, raising a child), the ALJ determined that Lopez could perform low stress work with limited social contact. (R. 35–36)

### *Medical Record and Opinion Evidence on Lopez's Physical Condition*

The ALJ considered the following evidence pertaining to Lopez's left foot fracture.

Lopez injured her left foot on stairs in January 2008 and was thereafter treated for a fracture of the left calcaneus. X-ray and MRI records indicated good healing of the fracture through October 2008 and records did not indicate a need for an assistive walking device. Lopez tolerated an anti-inflammatory drug for swelling and was generally comfortable as of July 2008. A January 2009 MRI of Lopez's left ankle led to a new diagnosis of posttraumatic subtalar arthritis. For this, Lopez underwent subtalar fusion surgery that same month. Notes from a psychologist's November 2009 report remarked that Lopez had a steady gait and slight limp. In June 2010, surgery was performed to remove two screws from Lopez's heel. Records from July 2010, November 2010, and April and June of 2011 indicated normal healing and normal range of motion. (*See* R. 33–34)

Separate from the fractures, and six months after the last date insured, in April 2011 Lopez reported pain with heel raising, which led to a diagnosis of Haglund's deformity and calcification in the Achilles tendon. (R. 34)

13

As to physical impairments, the ALJ's decision specifically addressed the opinions of ten clinicians:

(1) Chiropractor Eric Chldzinski reported in an undated form that Lopez could not lift over 20 pounds or stand and/or walk for more than two hours per day. He reported first examining Lopez in April 2009 but also reported referred to an examination in August 2008. Because of the unclear treatment period and lack of explanation in Clhdzinski's report, the ALJ assigned the chiropractor's form little weight. (R. 36)

(2) For similar reasons, the ALJ also assigned little weight to the undated form of Shasta Victoria G. Castro-Penullar, a physical therapist who stated Lopez could ride the bus or subway and occasionally squat and climb. (*Id.*)

(3) Nikolaos Galakos, a State agency examiner, reviewed Lopez's medical evidence of record and determined in a June 2007 report that Lopez could occasionally and frequently lift up to ten pounds, could stand for two hours, sit for six hours, and push and pull with no limitation. The ALJ assigned Galakos's report little weight because it was written prior to Lopez's foot injury and the limitation to lifting ten pounds was inconsistent with Lopez's ability to care for her infant child. (*Id.*)

(4) Joseph Mosquera, M.D., reported in March 2008 that the severity of Lopez's fibromyalgia rheumatica, which Dr. Mosquera was treating, left Lopez physically unfit to perform the heavy duties of her job. In Dr. Mosquera's opinion, Lopez could only tolerate light duty work. The ALJ assigned this opinion weight in limiting Lopez to light exertional level work. Dr. Mosquera also noted Lopez's stomach and bowl pain, but the ALJ weighed this against Lopez's ability to maintain busy activities, raise a child, and complete light household chores, drive, vacation, and shop. (R. 36–37)

(5) ALJ Kilgannon also assigned weight to the opinion of primary care provider Eric Shen, M.D., who was a regular care provider familiar with Lopez's condition and wrote that Lopez suffered from colitis,

14

which caused recurrent pain and diarrhea exacerbated by stress. The ALJ determined that this opinion supported limiting Lopez to light work. (R. 37)

(6) In October 2012 and October 2013, S. Mody, M.D., completed disability forms. They reported that Dr. Mody started seeing Lopez in December 2011 and that her condition also began around that time— a year after the date last insured. Thus, the ALJ assigned the forms little weight for determining work restrictions during the relevant time period.

(7) In August 2013, almost three years after the date last insured, Rahel Eyassu, M.D., undertook a consultative examination of Lopez at the SSA's request. Dr. Eyassu opined on restrictions, but primarily with respect to conditions that were diagnosed after the relevant time period—a diagnosis of lupus in 2011, for example. (R. 37) Thus, Dr. Eyassu's opinion was given little weight.

(8) Dr. Ed Mastromonaco, D.O., an orthopedic specialist, completed a disability form for Listing 1.02(A) and listing 1.03(A) (major dysfunction of a joint and reconstructive surgery or surgical arthrodesis of a major weight-bearing joint) in September 2013. As Dr. Mastromonaco's opinion is the only medical opinion to which Lopez claims the ALJ should have assigned more weight, I will quote the ALJ's discussion of it directly:

> The opinion is assigned little weight. The doctor is not clear as to when the limitations or listings were intended to apply and if the assigned restrictions were ongoing or supposed to last for a continuous period of twelve months. For example, the doctor wrote that for an assistive device, the claimant used "crutches" but the record does not support that throughout the relevant period she used crutches or required the ongoing use of an assistive device. Treatment notes after she injured her foot do not support that [s]he needed the ongoing use of an assistive device (Ex. 10F). The claimant was observed to have a steady gait with only a slight limp (Ex. 21F, p. 3). The claimant's

physical therapist also reported that in late 2009, the claimant only had mild joint effusion and reported there was decreased tolerance to prolonged walking but did not indicate the claimant needed an assistive device (Ex. 36F, p. 1). A physical examination shortly before her date last insured also showed her extremities had no clubbing, cyanosis, edema, or deformity noted, as well as normal full range of motion of all joints (Ex. 28F, p. 3). Finally, the doctor's opinion also makes little sense. For example, he circled "no" for if the claimant had surgical arthrodesis or major weight-bearing joint but then for the follow-up question, "if yes, please identify the affected joint" he wrote "l. ankle" (Ex. 44F, p. 4).

(R. 37–38).

(9) Steven Sheskian, M.D., completed a disability form for listing 1.08 in September 2013. The form does not indicate when Dr. Sheskian thought Lopez's condition met the listing, nor opine on functional restrictions between 2005 and 2010. Because the form was completed almost three years after the relevant time period had ended and because the ALJ determined that the records did not support "continuing surgical management for the purpose of the salvage or restoration of major function" to her foot, as a 1.08 listing requires, the ALJ assigned little weight to Sheskian's form. (R. 38)

(10) Finally, Clifford Botwin, D.O., who completed a disability form for listings 1.02(A) and 1.03 in October 2013, stated that Lopez had not had surgical arthrodesis or reconstructive surgery of a major weight bearing joint. Dr. Botwin reported seeing Lopez for a six-month period in 2008; at the end of this period, he thought Lopez was doing well and could be discharged from his care. Yet, he opined that Lopez could stand or walk for "zero hours" and that she needed crutches and a walking boot at some point in the 2006–2011 time frame. ALJ Kilgannon assigned little weight to Dr. Botwin's opinion on the basis of inconsistencies internally and with the other medical opinions and

16

because Dr. Botwin did not specify the time period for Lopez's functional restrictions. (*Id.*)

Considering these opinions and other record medical evidence, and measuring that evidence against Lopez's subjective reports and testimony (described *supra*), Lopez's "lack of credibility in some areas, and the inconsistencies in other areas," ALJ Kilgannon determined that the RFC, *supra*, was supported; "a further degree of restriction is not warranted," he concluded. (R. 38–39)

ALJ Kilgannon then determined that Lopez was "capable of performing past relevant work as a housekeeper" as "actually and generally performed" because such "work did not require the performance of work-related activities precluded by [Lopez's] [RFC]." (R. 39) To support this determination, the ALJ adopted the opinion of a VE who testified at the November 7, 2013 hearing on the nature of Lopez's past relevant work, which the VE classified as "cleaner housekeeping (DOT code: 323.687-014) light and unskilled with an SVP of 2."[5] (*Id.*) The VE's testimony relied on a hypothetical posed by the ALJ that incorporated Lopez's RFC.

## Step 5

ALJ Kilgannon then proceeded to step five as an alternative ground for finding Lopez not disabled. On this step, the ALJ first explained that, although Lopez attempted to establish she could not communicate in English, she testified at her initial hearing in English, filled out forms in English, "is bilingual and fluent in English" according to evaluation notes, and, according to records, moved to the United States in 1990. (*Id.*) Because Lopez can communicate in English, was by definition "a younger individual age 18–49, on the date last insured (20 CFR 404.1563)," and reported having a high school diploma, the ALJ explained that transferability of job skills is not material to a disability determination under the Medical-Vocational Rules. (*Id.*)

---

[5]    "DOT" refers to the Dictionary of Occupational Titles, to which the Social Security regulations frequently cite and which is a proper source of reference in the five-step disability determination.

The ALJ then found that there are jobs existing in significant numbers in the national economy that Lopez can perform. The ALJ acknowledged that Lopez was not capable of performing all or substantially all of the requirements of light exertional work; she suffered from additional limitations that could "erode the unskilled light occupational base." Thus, to determine the impact of this erosion, the ALJ again relied on the VE's testimony, as cross-referenced with the Dictionary of Occupational Titles. This testimony identified several light work jobs that Lopez is capable of performing, including mailing clerk, mail room clerk, and order filler. (R. 39–40).

Because ALJ Kilgannon determined that Lopez was capable of performing her past relevant work and, in the alternative, capable of successfully adjusting to other work available in the economy, he concluded that Lopez "was not under a disability, as defined in the Social Security Act, at any time from March 15, 2005, the alleged onset date, through December 31, 2010, the date last insured."  (R. 40 (citing 20 CFR 404.150(f))

## C. Mr. Lopez's Appeal and Analysis

Lopez assigns four errors to the ALJ's decision. The first and third, standing alone, would probably be considered harmless. But the second and fourth raise are more significant and may, in turn, alter the significance of the "harmless" errors. Therefore, I will remand the case for further evaluation with instruction to correct all errors, harmless or not, in accordance with the discussion below.

### 1. Step Two Analysis of "Severe" Impairments

Lopez argues that ALJ Kilgannon improperly rejected Crohn's disease and fibromyalgia as severe impairments because the threshold of severity at step two is an unexacting one, requiring only that the Commissioner screen out *de minimis* claims based on impairments that are nothing more than "slight abnormalities" (Br. 16). This is an accurate characterization of Step Two, which the Third Circuit explains as follows:

> The burden placed on an applicant at step two is not an exacting one. Although the regulatory language

18

speaks in terms of "severity," the Commissioner has clarified that an applicant need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85–28, 1985 WL 56856, at *3.... Any doubt as to whether this showing has been made is to be resolved in favor of the applicant.... In short, the step-two inquiry is a *de minimis* screening device to dispose of groundless claims.

Due to this limited function, the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny. We do not suggest, however, that a reviewing court should apply a more stringent standard of review in these cases. The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360–61 (3d Cir. 2004).[6]

The Commissioner reiterates the ALJ's discussion of evidence at Step Two and argues that Lopez did not submit any real evidence that Crohn's disease or fibromyalgia limited her ability to perform basic work activities; diagnoses alone are not enough. (Opp. 20) Furthermore, says the Commissioner, whether Crohn's disease and fibromyalgia should have proceeded past step two is legally irrelevant because ALJ Kilgannon *did* consider Lopez's foot fracture and depression severe and thus continued the analysis through the remaining three steps anyway. And in doing so, the ALJ considered *all* impairments—severe or not—to determine Lopez's RFC. (*Id.*)[7]

---

[6]     *See also* 20 C.F.R. §§ 404.1520(c), 416.920(c) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Social Security Administration] will find that you do not have a severe impairment and are, therefore, not disabled.'"). The regulations define "basic work activities" to include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." §§ 404.1521(b)(1), 416.921(b)(1). *See also Afanador v. Comm'r of Soc. Sec.*, No. CV 15-2056(NLH), 2016 WL 3046263, at *3 (D.N.J. May 27, 2016).

[7]     Lopez argues the opposite—that "because the ALJ improperly found these impairments non-severe at Step Two, he further failed to assess any limitations from

In short, the Commissioner argues that the ALJ's 's decision is saved by its compliance with the following instructions:

> In the absence of a showing that there is a "medically determinable physical or mental impairment," an individual must be found not disabled at step 2 of the sequential evaluation process. No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment.

*Titles II & Xvi: Symptoms, Medically Determinable Physical & Mental Impairments, & Exertional & Nonexertional Limitations*, SSR 96-4P (S.S.A. July 2, 1996). And:

> We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe'

20 C.F.R. § 404.1545 (a)(2).

I have reviewed the record evidence and believe Lopez's fibromyalgia and Crohn's disease should have progressed past Step Two. To be sure, ALJ Kilgannon raised contradicting considerations with respect to the definiteness of diagnoses and the "intensity, persistence, and limiting effects" of Lopez's Crohn's disease and fibromyalgia. Social Security Ruling (SSR) 96-3p. *Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment Is Severe*, 61 FR 34468-01. But the record evidence includes several clear diagnoses of the conditions and much of the evidence rises above mere diagnoses or symptom reports. For example, Lopez's treating gastroenterologist, Dr. Eric Shen, wrote in April 2008 that, because Lopez's gastrointestinal symptoms "appear to be worse when she is under significant stress . . . . she may benefit from lighter duties during her

---

these impairments at Step Four (formulation of RFC)." (Br. 18) I do not read the ALJ's decision that way.

work." (R. 1071) Similarly, Lopez's treating physician for fibromyalgia, Dr. Saraceno,[8] wrote in March 2008 that "she is not physically fit to perform . . . heavy duties . . . . [but] Ms. Lopez would however be able to tolerate light duty assignment." (R. 1080).

Medical records also reported that Lopez experienced rectal bleeding and daily abdominal pain from Crohn's disease during the relevant time period (*e.g.*, R. 790, 1055), and that, just prior to the relevant time period, she suffered from "generalized pain for over 3 months" and sleep deprivation associated with fibromyalgia. (R. 644).

Resolving doubts in favor of Lopez at this threshold step, I believe Lopez's Crohn's disease and fibromyalgia more than minimally limit her ability to perform "basic work activities," such as "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b)(5). *See also Soc. Sec. Ruling, Ssr 12-2p; Titles II & Xvi: Evaluation of Fibromyalgia*, SSR 12-2P (S.S.A. July 25, 2012) ("If the person's pain or other symptoms cause a limitation or restriction that has more than a minimal effect on the ability to perform basic work activities, we will find that the person has a severe impairment(s)."); *McCrea,* 370 F.3d at 360; *Cintron v. Comm'r of Soc. Sec.*, No. 2:13-CV-7125 KM, 2014 WL 6800613, at *6–7 (D.N.J. Dec. 2, 2014).[9]

That said, I agree with the Commissioner that any error in characterizing Lopez's fibromyalgia and Crohn's disease as non-severe at Step Two was harmless because the ALJ, having found other severe impairments at Step Two, did not terminate the analysis but went on to consider her fibromyalgia

---

[8]    The ALJ's decision and record refers to this letter as submitted by Dr. Mosquera. In the interest of clarity, I will note that the letter is signed by a Dr. Saraceno, but appears on letterhead indicating that Dr. Saraceno was in practice with Dr. Mosquera. Subsequent reports in the record indicate that Dr. Mosquera was Lopez's referring physician. Thus, I think it is reasonable to assume that Drs. Saraceno and Mosquera were in practice together and that Lopez saw either one or the other regularly.

[9]    On roughly the same record, ALJ Krappa's September 19, 2011 decision denying disability benefits determined at this step that Lopez's fibromyalgia but not Crohn's disease was a severe impairment. (*See* R. 204–205)

and Crohn's disease-based limitations when he formulated the RFC.[10] Indeed, in his discussion of the RFC, ALJ Kilgannon considered the opinions of Dr. Mosqura (or Dr. Saraceno, *see* n.9, *supra*) and Dr. Shen, as well as Lopez's subjective complaints. (*See* R. 32, 36). The ALJ expressly assigned more weight to these opinions than he did to most others, and it appears they played a significant role in the ALJ's decision to assign Lopez to a "light work" RFC. Thus, any error at Step Two was corrected at later stages of the sequential analysis.

Nevertheless, because, I am remanding this case for reasons discussed *infra*, the ALJ should reconsider the treatment of fibromyalgia and Crohn's disease at Step Two.

### 2.   Dr. Mastromonaco's Opinion

Lopez raises two main arguments as to why ALJ Kilgannon committed reversible error by "rejecting the well-supported opinion" of Dr. Mastromonaco, whose opinion she claims the ALJ should have given controlling weight.[11] (Br. 8)

First, Lopez avers that the ALJ erred when he reasoned that Dr. Mastromonaco had not provided a clear time frame for Lopez's functional limitations. (*Id.* 12; Reply 1) To the contrary, Lopez argues, Dr. Mastromonaco was specifically asked to consider Lopez's condition from 2006 through early

---

[10]     *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007) (citing *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir.2005)); *Abdulwali Nasiyruddiyn v. Colvin*, No. CV 15-03701 (JLL), 2016 WL 4432688, at *4 (D.N.J. Aug. 18, 2016) ("Notably, even if the ALJ erred with respect to the mental impairments that he found to be non-severe, such error would be harmless. The step-two inquiry is a *de minimis* screening device to dispose of groundless claims.'" (quoting *Newell v. Commissioner of Social* Security, 347 F.3d 541, 546 (3d Cir. 2003))); *Strelec v. Colvin*, No. CV 15-3010 (JLL), 2016 WL 2736103, at *3 (D.N.J. May 11, 2016) ("Additionally, even if the ALJ erred with respect to one of the impairments that he/she found to be non-severe, such error would be harmless as he/she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in his/her RFC finding.").

[11]     The ALJ did not expressly "reject" Dr. Mastromonaco's opinion. Rather, he stated that he was assigning it "little weight," as he did several other medical opinions in the record. (*See* R. 35–38).

2011, and, Dr. Mastromonaco tied what, in his opinion, was a major dysfunction of Lopez's left ankle to Lopez's 2008 and 2010 surgeries. (*Id.* 11 (citing R. 1204–1206).

    I agree that Dr. Mastromonaco's opinion was not really so unclear as to when Lopez's limitations or listings applied; as Lopez points out, the report form Dr. Mastromonaco used referred specifically to the 2006–early 2011 time period. And, since the very subject of Dr. Mastromonaco's opinion was Lopez's foot injury in 2008 and related surgeries in 2009 and 2010, any reasonable factfinder could infer that Dr. Mastromonaco was referring to the 2008–2010 time period.

    Second—and more importantly, I think—Lopez argues that the ALJ did not credit Mastromonaco's statement that Lopez could only engage in limited walking and standing—a limitation at odds with "light work", which by definition entails standing/walking up to six hours per day.[12] (Br. 13) Lopez maintains that the opinion of physical therapist Shasta Castro-Pennular corroborates Mastromonaco's opinion; Castro-Pennular noted that Lopez "experiences decreased tolerance to prolonged walking and standing." (*Id.* 14 (citing R. 1097)) Lopez also points to clinical reports of swelling with prolonged standing and walking, as well as imaging and surgical records. (Reply 2–3)

    The Commissioner replies that, although opinions of treating clinicians are generally given more weight, an ALJ need not accept uncritically opinions that are inconsistent with or unsupported by other record evidence. (Opp. 21 (citing 20 C.F.R. §§ 404.1527(c)(2)–(4)[13]; *Griffin v. Comm'r of Soc. Sec.*, 305 F.

---

[12]    Lopez contends that it is not clear from Dr. Mastromonaco's opinion whether Lopez would even be capable of performing sedentary work, which requires up to two hours of standing and walking per day. (Br. 15 n.6 (citing SSR 83-10))

[13]    20 C.F.R. §§ 404.1527(c)(2) provides, in part: "*If* we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight." (emphases added).

23

App'x 886, 891 (3d Cir. 2009)). That of course is a correct statement of the law. As the Third Circuit has explained:

> A treating physician's opinion on the nature and severity of an impairment will be given controlling weight only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *See Fargnoli v. Massanari,* 247 F.3d 34, 43 (3d Cir.2001). If, however, the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains her reasons and makes a clear record. *See Jones,* 954 F.2d at 129. When a treating source's opinion is not entitled to controlling weight, it is evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors including the opinion's supportability, consistency and specialization. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ need not defer to a treating physician's opinion about the ultimate issue of disability because that determination is an administrative finding reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e).

*Salles v. Comm'r of Soc. Sec.,* 229 F. App'x 140, 148 (3d Cir. 2007).

Upon examination of the record, I find that Dr. Mastromonaco's findings contain a few genuine inconsistencies,[14] but none substantial enough to justify what, in effect, was a wholesale rejection of Dr. Mastromonaco's opinion on the issue of Lopez's ambulatory limitations. And certain inconsistencies identified by the ALJ relied were really no such thing.

---

[14]     Compare, for example, Dr. Mastromonaco's 2013 statement reporting that Lopez could not ride on public transportation during the 2006–early 2011 time period (R. 1203, 1208), with the 2009 record of Ms. Castro-Pennular stating that Lopez was physically able to travel to and from work by bus and subway on a daily basis.[14] (R. 1101)

     Additionally, one of Dr. Mastromonaco's own reports from April 2009 states that he could not provide, based on his medical findings, his medical opinion regarding Lopez's ability to do work related activities. (R. 982) And, as ALJ Kilgannon noted in evaluation of Dr. Mastromonaco's opinion, another clinician observed that Lopez had a steady gait with only a slight limp in November 2009. (R. 37–38 (citing R. 997))

For example, the ALJ found no support for Dr. Mastromonaco's opinion that Lopez required a walking boot and crutches. Dr. Mastromonaco's own treatment notes, it is truew, do not refer to Lopez's use of these devices, but Dr. Botwin opined that Lopez required crutches and a walking boot. Lopez's orthopedic records are also consistent with the use of these devices: a February 2008 report stated that Lopez was directed to "progressive ambulation with weight bearing"—an activity often undertaken while using crutches and a walking boot—and Dr. Mastromonaco's notes from May 2011 show that Lopez reported an 8 out of 10 pain level in her left ankle while walking. A report on a March 2009 field interview conducted by an SSA agent (not medical evidence, but useful as corroboration) stated that Lopez used a crutch at the interview. (R. 525)

Moreover, the ALJ concluded: "While the claimant alleges severe restrictions due to her left ankle, the record indicates relatively mild limitations." (R. 38) In support of this conclusion, the ALJ cited Lopez's vacation to Europe and her self-reported ability to carry out various regular activities like shopping, attending church, and caring for her child. (*Id.* (citing R. 516–523)). But Lopez reported on these activities in a function report dated January 2007—a year before she injured her left foot. Therefore, at least on the issue of Lopez's walking restrictions, it was not reasonable to weigh the function report against the other evidence.

Substantial evidence did not support the ALJ's rejection of Dr. Mastromonaco's opinion (as well as other evidence in the record on the issue of Lopez's ambulatory limitations) when determining Lopez's RFC. I therefore find that Lopez's RFC, with respect to its lack of ambulatory restrictions, was not supported by substantial evidence.[15]

---

[15]   The ALJ did state that Lopez was afforded limitations for light work as well as climbing, balancing, stooping, kneeling, crouching, and crawling limitations in her RFC on the basis of left foot/ankle pain, among other pain complaints. But, "light work" by definition "requires a good deal of walking or standing," and the RFC does not specify any exceptions to this requirement.

That is sufficient cause for remand. *See Podedworny*, 745 F.2d at 221–22; *Burnett*, 220 F.3d at 119–20; *Adorno*, 40 F.3d at 48. On remand, the ALJ should reevaluate Dr. Mastromonaco's opinion, as well as Dr. Botwin's and any other evidence supporting Lopez's impaired ability to walk, between January 2008 and the date last insured.[16] The ALJ should reevaluate this evidence with respect to medical listings 1.02 and 1.03 at Step Three and, if the analysis proceeds further, when determining Lopez's RFC.

### 3.   <u>Mr. Lopez's testimony</u>

Lopez also assigns error to the ALJ because his decision never mentions, and thus does not assign weight or credibility to, the testimony of Lopez's husband, Jose Lopez. Jose Lopez testified during Lopez's October 8, 2013 hearing that he—and not his wife—performs many household chores, and that his wife had become increasingly nervous, fatigued, and socially isolated. (Br. 19–21; *see* R. 131–138)

Arguing that ALJ Kilgannon significantly erred by failing to discuss her husband's testimony, Lopez cites *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). There, the Third Circuit addressed an ALJ's similar omission:

> In this case, the ALJ explained he rejected Burnett's testimony regarding the extent of her pain because he determined it was not supported by the objective

---

[16]     Neither party discusses in their briefing the fact that the September 19, 2011 decision of ALJ Krappa found Lopez capable of performing only sedentary work. Nor does either party cite the testimony of Martin A. Fechner, M.D., a medical expert on whose testimony at Lopez's April 11, 2011 hearing ALJ Krappa heavily relied to arrive at this conclusion. This is understandable; ALJ Krappa's September 19, 2011 decision concluded that Lopez could perform certain sedentary work positions—and therefore was not favorable for Lopez—whereas ALJ Kilgannon's decision reached the same conclusion of non-disability but did so based on a more strenuous "light work"-based RFC—and thus is more favorable for the Commissioner's purposes, even if the result is the same. The RFC that ALJ Krappa rendered in the September 19, 2011 decision also limited Lopez to work involving very little mental demand and social contact.

I note these prior findings to caution Lopez that even if on remand her RFC reflects greater ambulatory limitations (in the event the ALJ does not find a medical listing met at Step Three), the ultimate outcome might not change.

medical evidence. However, the ALJ failed to mention the testimony of Burnett's husband, George Burnett, and her neighbor, Earl Sherman. On appeal, the Commissioner contends the ALJ did not need to mention their testimony because it "added nothing more than stating [Burnett's] testimony was truthful." Commissioner's Brief at 21. This argument lacks merit because the ALJ made a credibility determination regarding Burnett, and these witnesses were there to bolster her credibility. R. 17 ("claimant's allegations of disability made at hearing are unsubstantiated"). In *Van Horn,* we stated we expect the ALJ to address the testimony of such additional witnesses. On remand, the ALJ must address the testimony of George Burnett and Earl Sherman.

*Id.*

As in *Burnett*, the Commissioner here argues that Jose Lopez's testimony was cumulative of his wife's and therefore, the ALJ's failure to remark on the testimony was harmless error. Specifically, the Commissioner points out, Lopez testified that she takes her son to school and prepares him breakfast, does other cooking and cleaning with the help of her husband, and goes shopping with her husband. (Opp. 28; *see* R. 110, 116–118, 123–130) And the ALJ specifically found Lopez's testimony and other "statements concerning the intensity, persistence and limiting effects of [her] symptoms . . . not entirely credible" (R. 32) on the basis of their inconsistency with objective medical reports and/or Lopez's self-reported ability to perform regular activities. (Opp. 28 n. 11 (summarizing the evidence)). Thus, according to the Commissioner, Jose Lopez's testimony provided nothing new or significant enough to bolster Lopez's testimony because it too is inconsistent with the other record evidence.

The Commissioner cites a number of district court cases within the Third Circuit where an ALJ's oversight of cumulative evidence was deemed harmless error.[17] The courts in these cases did not err in distinguishing *Burnett*; since

---

[17]     *See Buffington v. Comm'r of Soc. Sec. Admin.*, No. CIV. 12-100 JBS, 2013 WL 796311, at *8–9 (D.N.J. Mar. 4, 2013) ("Because [the claimant's father's] testimony is largely cumulative of Plaintiff's own testimony, which the ALJ expressly found not credible, [the claimant's father's] opinions do not have a significant effect of the

*Burnett,* the Third Circuit has applied a harmless error rule in ruling on Social Security appeals. *Rutherford v. Barnhart,* 399 F.3d 546, 553 (3d Cir. 2005) ("We . . . conclude that a remand is not required here because it would not affect the outcome of the case."). Additionally, the Social Security Administration has explained in an interpretive ruling that an ALJ must consider all relevant evidence in an individual's case record, but "*generally should explain* the weight given to opinions from [non-medical sources], or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, *when* such opinions may have an effect on the outcome of the case." *Titles II & Xvi:II & Xvi: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims,* SSR 06-03P, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006) (emphases added).

---

outcome of the case."); *Dougherty v. Colvin,* No. CIV.A. 13-289, 2014 WL 4101205, at *7 (W.D. Pa. Aug. 18, 2014) ("Here, although the ALJ did not explicitly discuss [a caseworker's] testimony, he did state that his decision was based on "the entire record." (R. at 27). Moreover, it is evident that [the caseworker's] limited testimony would not have had an effect on the outcome of the case in light of the medical and opinion sources already in the record."); *Brandt v. Colvin,* No. 3:13-CV-02165, 2014 WL 4793956, at *6 (M.D. Pa. Sept. 24, 2014) ("[B]ecause Plaintiff's mother's testimony is cumulative of testimony the ALJ found was not credible, and because the Court found that the ALJs decision was supported by substantial evidence in all other regards, the Court also finds that the cumulative testimony of Plaintiff's mother would not have changed the outcome and will therefore not remand on the basis that the ALJ failed to address her testimony."); *Butterfield v. Astrue,* No. CIV.A. 06-0603, 2011 WL 1740121, at *7 (E.D. Pa. May 5, 2011) ("Although the ALJ was required to explicitly offer a credibility analysis of the lay witness statements, the Commissioner justifiably believed, under the deferential standard accorded to ALJ credibility determinations, that statements from Plaintiff's mother and daughter statements would not have changed the ALJ's decision, as they were cumulative and merely reiterated Plaintiff's complaints of depression and pain."); *Cerar v. Sec'y of Dep't of Health & Human Servs.,* No. CIV. A. 93-6973, 1995 WL 44551, at *4 (E.D. Pa. Feb. 1, 1995) ("t is true that the ALJ failed to address the credibility of the claimant's husband explicitly, but this alone would not require remand, because the ALJ demonstrated he considered and analyzed all the medical evidence and plaintiff's subjective testimony concerning pain. The plaintiff's testimony was credited by the ALJ to the extent consistent with medical testimony; crediting the husband's testimony corroborating the plaintiff's would not have affected the ALJ's decision.").

I agree that Jose Lopez's October 8, 2013 testimony is substantially cumulative of his wife's testimony and that, if I were not already remanding on other grounds, the harmless error rule would apply here.[18] The ALJ considered and discussed the medical and other evidence at length in relation to Lopez's statements. (*See, e.g.,* R. 30, 32, 38–39) Thus, because the Lopezes' testimony is cumulative, it is clear from ALJ Kilgannon's discussion that he would have deemed the objective medical and other evidence in the record to be inconsistent with Jose Lopez's testimony. *See Bailey v. Comm'r of Soc. Sec.,* 354 F. App'x 613, 618 (3d Cir. 2009) (non-precedential) (finding that ALJ properly discounted claimant's testimony by basing finding on the specific medical evidence in the record).

Nevertheless, when the ALJ reevaluates the evidence supporting Lopez's ambulatory impairment on remand, he or she should do so in light of all the evidence, including that of Mr. Lopez. Although the remand is based on a particular issue, the entire context remains important.

### 4.     The ALJ's Hypothetical Question to the VE

Finally, Lopez argues that because the ALJ improperly rejected Dr. Mastromonaco's opinion and found several of Lopez's impairments non-severe, the hypothetical question the ALJ posed to the VE during Lopez's hearing did not reflect all of Lopez's impairments supported by the record. Lopez argues this rendered the ALJ's reliance on the VE's testimony (which in turn relied on the hypothetical) reversible error. (Br. 18–19)

While hypothetical questions posed to the VE need not incorporate *every* impairment a claimant alleges, "the hypotheticals posed must 'accurately portray' the claimant's impairments and [] the expert must be given an

---

[18]     Lopez argues that Jose Lopez testified to performing many chores the ALJ's decision improperly attributed to Lopez, and that he testified that his wife had become more nervous, fatigued, and isolated. (Reply 6 (citing R. 131–32)) But Lopez herself testified that her husband starting doing all or most cooking, laundry, and shopping at some point during the relevant time period (R. 124–126), that she is sometimes too tired to shower, (R. 125), and that since 2008, she no longer goes out walking or to see friends (R. 129). ALJ Kilgannon also acknowledged that Lopez performs household chores and other activities "with assistance." (R. 29).

opportunity to evaluate those impairments 'as contained in the record.'"
*Rutherford v. Barnhart*, 399 F.3d 546, 553–54 (3d Cir. 2005).

For the reasons discussed *supra*, substantial evidence did not support
the RFC. And of course (as is clear from the transcript of the November 7,
2013), the ALJ's hypothetical was based on Lopez's RFC. (R. 73–74) On
remand, then, any hypothetical to the VE must incorporate whatever revisions
are made to the RFC.

## III.   CONCLUSION

For the foregoing reasons, the ALJ's decision is REMANDED for further
proceedings.

I am satisfied that two ALJs conscientiously dealt with a complex medical
record. This may simply be a case of the administrative process's failing to
catch up with new evidence of the applicant's ongoing impairments. I also wish
to clarify that I am not direct a finding either way on the issue of disability.
Because a finding of disability is context-dependent, I place no limit on the
matters that may be considered, or the rulings that may be made, on remand.

An appropriate order accompanies this Opinion.

Dated: December 27, 2016

**KEVIN MCNULTY**
**United States District Judge**

30